UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CABOT LODGE SECURITIES, LLC,

                      Plaintiff,

  -against-

STOLTMANN LAW OFFICES, P.C.,

                      Defendant.

23-cv-3970 (AS)

MEMORANDUM OPINION
AND ORDER

---

ARUN SUBRAMANIAN, United States District Judge.

## BACKGROUND

Stoltmann Law Offices currently represents 47 different claimants in two separate arbitrations against Cabot Lodge Securities. Am. Compl. ¶ 2, Dkt. 14. Not to be outdone, Cabot filed this lawsuit against Stoltmann. Cabot alleges that Stoltmann found the arbitration claimants by extracting Cabot's trade secrets from a former Cabot employee, Ann Louise Werts. ¶ 3. Cabot is an investment firm based in New York. ¶¶ 8–9. Stoltmann is a law firm based in Chicago. ¶ 10. Werts worked for Cabot in Colorado, and the arbitrations are pending there. *See* ¶ 67; Dkt. 18 ¶¶ 7, 18. None of the arbitration claimants is a New York resident. Dkt. 18 ¶ 19.

The arbitrations deal with "GWG L Bonds." *See* Am. Compl. ¶¶ 69–99. After the bond issuer went bankrupt, Stoltmann solicited clients to sue their brokerages. ¶¶ 70–71. Those solicitations included a press release that named Aegis Capital, a brokerage based in New York. ¶ 72. Cabot says Stoltmann also directly contacted Werts (who had sold the bonds to clients), threatening to sue her unless she turned over the contact information of clients who bought the bonds. ¶¶ 69, 76–77. Cabot says Werts turned over not just the names of bond purchasers but all of Cabot's client files. ¶¶ 79–81.

Cabot has seven claims: violation of the Federal Defend Trade Secrets Act, Colorado Uniform Trade Secrets Act, and Delaware Uniform Trade Secrets Act, tortious interference with contract and with business relations, misappropriation, and conversion. ¶¶ 119–48. Stoltmann has moved to dismiss for lack of personal jurisdiction, lack of venue, and failure to state a claim. Dkts. 16, 19. For the following reasons, Stoltmann's motion to dismiss for lack of personal jurisdiction is GRANTED.

## LEGAL STANDARDS

To survive a motion to dismiss, a complaint must include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2006)). In reviewing a motion to dismiss, the Court "accept[s] all factual allegations as true, and draw[s] all reasonable inferences in the plaintiff's favor." *Austin v. Town of Farmington*, 826 F.3d 622, 625 (2d Cir. 2016).

"When responding to a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that the court has jurisdiction over the defendant." *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999) (Sotomayor, J.). Before discovery, as here, the plaintiff "may defeat the [12(b)(2)] motion by pleading in good faith legally sufficient allegations of jurisdiction, i.e., by making a *prima facie* showing of jurisdiction." *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 184 (2d Cir. 1998) (internal quotation marks and citations omitted).

## DISCUSSION

Cabot does not claim that Stoltmann is subject to general jurisdiction in New York. Dkt. 28 at 11. Instead, it says two provisions of New York's long-arm statute establish specific jurisdiction: N.Y. C.P.L.R. § 302(a)(1) and (a)(3).[1] Section 302(a)(1) establishes jurisdiction over a defendant "[a]s to a cause of action arising from … transact[ing] any business within the state." And § 302(a)(3) covers certain situations in which a defendant "commits a tortious act without the state causing injury to person or property within the state." Neither provision establishes jurisdiction here.

### I.   Section 302(a)(1) does not cover Stoltmann's conduct

Section 302(a)(1)'s "transacts any business" language asks whether Stoltmann effectively "project[s] itself into New York." *Bank Brussels*, 171 F.3d at 788. Cabot says Stoltmann has done so by "deliberately targeting New York's securities markets," thereby "invok[ing] the benefits and protections" of New York law. Dkt. 28 at 15; *see also* Am. Compl. ¶¶ 13–18. But an out-of-state law firm does not transact business "within the state" merely by handling New York–related matters. *See Bank Brussels*, 171 F.3d at 787–88; *see also Bissonnette v. Podlaski*, 138 F. Supp. 3d 616, 624 (S.D.N.Y. 2015) (holding that "the provision of legal services … from outside of New York" is not transacting business in New York, even if "aspects of the underlying transaction … took place in New York or involved New York law," and collecting similar cases).

Cabot points to Stoltmann's press release and says that Stoltmann "specifically targeted a fellow Manhattan-based brokerage firm." Dkt. 28 at 16. But this argument falls doubly short. First, the press release may be about a New York firm (not Cabot, by the way), but it was not "purposeful[ly] creat[ing] a continuing relationship with a New York corporation." *D & R Glob. Selections, S.L. v. Bodega Olegario Falcon Pineiro*, 29 N.Y.3d 292, 298 (2017). Instead, the release's "targets" were potential clients, who might live anywhere in the world. Cabot does not allege that Stoltmann targeted New York clients or otherwise "initiate[d] contact with New York [or] solicit[ed] business in New York." *Id.* And even if some New Yorkers saw the press release, that

---

[1] In its complaint, Cabot also alleged that the forum-selection clause in its contract with Werts established personal jurisdiction over Stoltmann. Am. Compl. ¶ 12. But it has sensibly declined to pursue that argument in its brief. *Cf. Arcadia Biosciences, Inc. v. Vilmorin & Cie*, 356 F. Supp. 3d 379, 394–95 (S.D.N.Y. 2019) (rejecting such a theory).

would not be enough. "This use of the internet has been analogized to an advertisement in a nationally-available magazine or newspaper, and does not without more justify the exercise of jurisdiction over the defendant." *Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 565 (S.D.N.Y. 2000). In no sense did Stoltmann "avail[] itself of the privilege of conducting activities within New York." *D & R*, 29 N.Y.3d at 298 (cleaned up).

Second, Cabot has failed to give "some articulable nexus between the business transacted and the cause of action sued upon." *McGowan v. Smith*, 52 N.Y.2d 268, 272 (1981); *see also Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.*, 98 F.3d 25, 31 (2d Cir. 1996) (citation omitted) ("substantial nexus"). Here, Cabot's whole theory is that Stoltmann got Cabot's client names by targeting Werts, not through the press release. Plus, the press release was not even directed to Cabot, but rather a "fellow" New York firm. Even if the press release was some activity in this forum, this action does not "aris[e] from" it. *See Sole Resort, S.A. de C.V. v. Allure Resorts Management, LLC*, 450 F.3d 100, 103–04 (2d Cir. 2006) ("arising from" means more than "merely coincidental" or "tangential" (citation omitted)).

Similarly, Cabot asserts that "[w]ithout targeting New York County residents, Stoltmann would have to close shop." Am. Compl. ¶ 18. Even assuming that allegation is well-pleaded, Cabot has not linked that allegation to this lawsuit. Indeed, none of the arbitration claimants is a New York resident. Dkt. 18 ¶ 19. And there is no authority for the argument that every out-of-state law firm that focuses on financial markets is automatically subject to jurisdiction in New York. Indeed, as noted above, *Bank Brussels* suggests the opposite. As such, § 302(a)(1) does not establish jurisdiction over Stoltmann.

## II.     Stoltmann did not cause injury in New York under § 302(a)(3)

Nor did Stoltmann's alleged conduct "caus[e] injury" in New York. Under § 302(a)(3), courts "must generally apply a situs-of-injury test, which asks them to locate the original event which caused the injury." *Bank Brussels*, 171 F.3d at 791 (internal quotation marks and citation omitted). Identifying the "original event" is not quite as straightforward as it sounds. It is neither "the initial tort" nor "the final economic injury." *Id.* Instead, courts look for "the first effect[s] of the tort that caused the injury." *Id.* at 792.

Cabot's theory is that it was injured in New York because it was headquartered and stored its confidential information here. The headquarters argument plainly fails. Courts have routinely rejected allegations of "remote or consequential injuries such as lost commercial profits which occur in New York only because the plaintiff is domiciled or doing business here." *Troma Ent., Inc. v. Centennial Pictures Inc.*, 729 F.3d 215, 218 (2d Cir. 2013) (citation omitted).

One wrinkle here is that Stoltmann named Cabot as a respondent in the Colorado arbitrations. But Cabot doesn't rely on that fact. Dkt. 28 at 1 ("This case isn't about arbitrations in Colorado …."). And they don't change the calculus anyway. "[T]he expenditure of funds in defense of the [arbitrations] must be regarded as a remote consequence" of Stoltmann's allegedly coercing Werts.

3

*Mid-Atl. Residential Invs. Ltd. P'ship v. McGuire*, 560 N.Y.S.2d 431, 433 (1990). And those expenditures here are in Colorado, so the connection to New York is even more attenuated. "[I]t is clear the situs of the injury must be deemed to be [Colorado], where all the critical events associated with this dispute occurred." *Id.*

The storage argument doesn't fare any better. Cabot cites a series of cases involving defendants who stole information by *accessing* servers in the forum. Dkt. 28 at 13–14 (citing *Irth Sols., LLC v. Apex Data Sols. & Servs., LLC*, 2019 WL 283831, at *2–3 (W.D.N.Y. Jan. 22, 2019); *Argent Funds Grp., LLC v. Schutt*, 2006 WL 2349464, at *2 (D. Conn. June 27, 2006); *Medicrea USA, Inc. v. K2M Spine, Inc.*, 2018 WL 3407702, at *7 (S.D.N.Y. Feb. 7, 2018)). That didn't happen here. According to Cabot, Stoltmann accessed its information through Werts. Am. Compl. ¶¶ 75–81. And there's no allegation that, at the relevant times, Werts was anywhere but Colorado. *See* ¶ 67. So, on Cabot's theory, its injury was not in New York.

Maybe Cabot could have argued that its trade secrets are the kind of intellectual property that "cannot be 'circumscribed' to a particular locality." *Troma*, 729 F.3d at 220 (quoting *Penguin Grp. (USA) Inc. v. Am. Buddha*, 16 N.Y.3d 295, 305 (2011)). But it did not. It has chosen to frame its argument as a "traditional commercial tort case[ ]." Dkt. 28 at 13 (quoting *Penguin*, 16 N.Y.3d at 305).

Even if it had made the intellectual-property argument, it likely would have failed. Nothing in *Penguin* "relieves intellectual property owners of the obligation, in each case, to allege facts demonstrating a non-speculative and direct New York-based injury to its intellectual property rights." *Troma*, 729 F.3d at 220. *Penguin* involved the effect of digital piracy on the internet, which is uniquely hard to pin down to a particular geographic area. In that context, the New York Court of Appeals held that "the out-of-state location of the infringing conduct carries less weight in the jurisdictional inquiry." *Penguin*, 16 N.Y.3d at 305. Here, by contrast, the alleged harm was a "discrete, geographically circumscribed theft." *Troma*, 729 F.3d at 220. Plus, the harm from stolen trade secrets (or at least the trade secrets here) will often be easier to track than the more ethereal harms associated with other intellectual-property rights, like "market confusion" or reputational injury. *Penguin*, 16 N.Y.3d at 306 (quoting *Salinger v. Coting*, 607 F.3d 68, 81 (2d Cir. 2010)).

Indeed, the New York Court of Appeals approached the personal-jurisdiction analysis in much that way in another trade-secrets case. It held that New York courts had personal jurisdiction over an out-of-state trade-secret infringer when there was "the threatened loss of important New York customers." *Sybron Corp. v. Wetzel*, 46 N.Y.2d 197, 205 (1978). The court held that threat sufficient because the alleged trade-secret thief competed in the New York market, even if it was not located in the state. But the court contrasted that situation with another case in which "the only customers wrongfully solicited by defendants were located outside New York." *Id.* at 206 (discussing *American Eutectic Welding Alloys Sales Co. v. Dytron Alloys Corp.*, 439 F.2d 428, 432–35 (2d Cir. 1971)). This case is far closer to the latter.

At bottom, Cabot has not alleged any harm to its New York business. All the claimants are outside New York, Werts worked in Colorado, and the arbitrations are in Colorado. So the tort and

4

its first effects happened outside New York. Cabot felt the aftershocks in New York simply because it is headquartered here. Under § 302(a)(3), that is not enough.

## CONCLUSION

For the reasons above, Stoltmann's motion to dismiss for lack of personal jurisdiction is GRANTED, and all claims against Stoltmann are DISMISSED WITHOUT PREJUDICE to being reinstated in a forum that can exercise personal jurisdiction over Stoltmann. The Clerk of Court is directed to close the case.

SO ORDERED.

Dated: October 16, 2023
New York, New York

ARUN SUBRAMANIAN
United States District Judge

5